## HARRIS v. RORABACK.

DEEDS—CONDITIONS SUBSEQUENT—BUILDINGS.

> Where a deed contained a condition that the grantee, his heirs and assigns, would not occupy the premises except for one dwelling house on each lot, a subsequent grantee may be enjoined from erecting a two-story building designed for a dwelling in each story.

Appeal from Wayne; Rohnert, J. Submitted June 14, 1904. (Docket No. 16.) Decided July 16, 1904.

Bill by Albert S. Harris and others against Edwin C. Roraback and another to restrain the erection of a dwelling. From a decree for complainants, defendants appeal. Affirmed.

*William P. Corbett* (*Henry C. Walters*, of counsel), for complainants.

*William F. McCorkle*, for defendants.

CARPENTER, J. The parties to this suit are owners of lots on Woodland avenue, in the city of Detroit. The platters of this property placed in their conveyance of defendants' property, which ran to defendants' immediate grantor, the following restriction: "That the said second party, his heirs and assigns, will not occupy said premises except for one dwelling house to each lot." A similar restriction was placed in the conveyance of the property owned by complainants, and in all the conveyances on said avenue except one, and the owner of that excepted lot has complied with the restriction. Defendants have planned and started to build on their lot a two-story building, designed for two dwellings—one to occupy the ground floor, and one the second floor—each of which has a separate entrance and a separate cellar. Complainants contend that this structure is forbidden by the above-quoted language in the deed, and they bring this suit to enjoin its erection. They obtained a decree in the court below, and defendants have appealed to this court.

The decision of this case depends upon the proper construction of the restriction in the deed. We cannot agree with defendants that the force of this language is in any way impaired by the fact that the land contract which preceded the deed contained the words "a dwelling house," instead of the words "one dwelling house." If these two expressions have the same meaning, the land contract cuts no figure in this case. If they have different meanings, there is nothing to indicate that full force shall not be given to the language of the deed, which was the last expression of the parties. In my judgment, we can safely construe the restriction from its own language, and without looking outside that language. While there is authority for saying that, in construing this language, we should resolve doubts in favor of the defendants (see *Stone* v. *Pillsbury*, 167 Mass., at page 337 [45 N. E. 768], and authorities there cited), it is none the less our duty to give said language its obvious meaning. We are to construe the language in accordance with the intention of the par-

ties to the deed. In construing it, we should not assume that the restriction was inserted solely for the benefit of the grantor. The purpose of the restriction is to benefit not merely the grantor, but every owner of property and every resident on the street. Such a restriction assures purchasers that property will be devoted in a specified manner to residence purposes, and has a tendency to increase its value. And we think it not improper to say that it may fairly be inferred in the case at bar that this restriction and its general observance have increased the value of defendants' property.

In ascertaining the intention of the parties to the deed containing this restriction, we obtain, in our judgment, little aid by discussing defendants' contention, with which we do not agree, that "one" refers to "house," and not to "dwelling." We obtain infinitely more aid by looking at the sentence as a whole, and thus determining its obvious meaning. When the parties agreed not to occupy said premises, "except for one dwelling house," they obviously intended to agree, and they did therefore agree, that no building should be thereon erected which could not be described as one dwelling house. In the sense in which words are ordinarily used—and we must presume these words to be used in that sense—a building planned and designed for two or more dwellings cannot properly be described as one dwelling house. I think we are bound to hold that by the language in question the parties to this deed intended that no house except one planned and designed for a single dwelling should be erected. The case of *Gillis* v. *Bailey*, 21 N. H. 149, is an authority which supports our conclusion. *Hutchinson* v. *Ulrich*, 145 Ill. 336 (34 N. E. 556, 21 L. R. A. 391), relied upon by defendants, is opposed to this decision. It appeared in that case that, at the time the deed containing the restriction in question was made, flats or apartment houses like that which defendants were seeking to erect had been erected and were then in common use within a short distance of the lots purchased by defendants. This circumstance,

which was given great, if not controlling, weight, distinguishes that case from the one before us, for here no such buildings had been erected in the vicinity at the time the deed containing the restriction was made.

The case of *Stone* v. *Pillsbury*, 167 Mass. 332 (45 N. E. 768), also relied upon by defendants, is more clearly distinguishable. It was there decided that a building designed and planned as the residence of a single family might, without any change either in its exterior or interior, while used as a residence for a single family, also be used as a gold-cure sanitarium, without violating a restriction like the one in question. No such question is involved in this case. The question here is not how a building planned and designed as the residence of a single family shall be subsequently used, but it is whether a building designed and planned for two separate residences is properly described as one dwelling house. As already stated, we think it is clear that it is not.

The decree of the court below will therefore be affirmed, with costs.

The other Justices concurred.